UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

SVETLANA KHANIMOVA, *et al.*,
                Plaintiffs,

-v-

MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, *et al.*,
                Defendants.

24-CV-4304 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

Plaintiff Svetlana Khanimova, individually and on behalf of her daughter, R.N., brings this suit against Defendants the New York City Department of Education ("DOE") and Melissa Aviles-Ramos, in her official capacity as DOE Chancellor.[1] Khanimova alleges that Defendants violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and its implementing regulations, and owe Khanimova reimbursement for the cost of private school tuition, transportation to and from school, and one-one-one nursing services for part of the 2023-2024 extended school year. Khanimova further demands the DOE pay for an Independent Educational Evaluation ("IEE") for R.N.

Before the Court are cross-motions for summary judgment. For the reasons that follow, Khanimova's motion is denied as to her tuition and related services claims and granted as to her IEE claim, and Defendants' motion is granted on all claims except the IEE claim.

―――

[1] The Clerk of Court is directed to amend the case caption as set forth above. The present action was originally filed against David C. Banks in his official capacity as DOE Chancellor. (ECF No. 1.) However, the current Chancellor is Melissa Aviles-Ramos. Pursuant to Federal Rule of Civil Procedure 25(d), Aviles-Ramos is automatically substituted as a named defendant.

I.  **Background**

    A.  **Factual Background**

Because the parties agree that their motions are "based solely on the administrative record," and the Court thus permitted them to forego filing Local Rule 56.1 statements (ECF No. 10-1 at 2), the Court draws from the official administrative record as well as Khanimova's complaint and other briefing, where those facts are not in dispute.

R.N. is a minor "who suffers from a brain injury," as well as "seizure disorder, infantile spasms, hearing loss, and blindness, among other conditions." (ECF No. 1 ("Compl.") ¶¶ 54-55.) Because of her brain injury, she has "severe global impairments and delays" impacting her ability to speak, her physical abilities, and her cognition and memory. (*Id.* ¶ 56.) These limitations require R.N. to have assistance for all daily activities. (*Id.* ¶ 58.)

R.N. began attending the International Academy for the Brain ("iBrain") in 2021. (ECF No. 17-1 ("Rec. I") at 11; Compl. ¶ 22.) On June 20, 2023, Khanimova notified the DOE that she would not be sending R.N. to her assigned public school, but instead would keep R.N. at iBrain for the 2023-2024 school year. (Rec. I at 12.) Khanimova told the DOE that she would seek public funding to pay for iBrain's tuition. (*Id.*) On June 26, 2023, Khanimova executed contracts with iBrain for "12-month programming," as well as with a transportation group called Sisters Travel and Transportation Services, LLC ("Sisters Travel"), and a nursing care service called B&H Health Care, Inc. ("B&H") to provide R.N. with one-on-one nursing care during the school day and transit times. (*Id.*)

Khanimova filed a due process complaint against the DOE on July 5, 2023, alleging that the district had failed to provide R.N. a free appropriate public education ("FAPE") for the 2023-2024 school year, and that iBrain was a proper placement. (*Id.*) Khanimova requested funding for iBrain tuition, transportation costs, nursing costs, and a series of evaluations and assessments

for R.N. (*Id.*) The tuition for iBrain cost $319,624 for the 2023-2024 school year, transportation from Sisters Travel cost $166,770 per year, and nursing services from B&H cost $292,556 per year. (ECF No. 17-4 ("Rec. IV") at 164, 233, 251.) Thus, the total cost to send R.N. to iBrain for the 2023-2024 year would have been $778,950.

An Impartial Hearing Officer ("IHO") conducted review proceedings and issued a decision on November 2, 2023. (Rec. I at 12-13; Compl. ¶ 8.) The IHO concluded (1) that the DOE had failed to provide a FAPE to R.N. for the ongoing school year and (2) that Khanimova failed to meet her burden of establishing that iBrain was a proper placement. (Rec. I at 38.) The IHO based her second finding, the one relevant to this action, on the following facts:

- The record from the impartial hearing did not adduce sufficient evidence that iBrain's curriculum was meeting R.N.'s "unique special education needs." In fact, it lacked any information about iBrain's "current instruction and techniques."
- The only witness from iBrain (Caleb Asomugha) had been employed there for less than a year and did "not teach or provide any services" to R.N.
- Asomugha made false statements during the proceedings about his own credentials and those of R.N.'s classroom teacher.
- Khanimova objected to having R.N.'s progress reports from iBrain admitted as evidence.

(*Id.* at 38-39; *see also* ECF No. 22 ("Cross Mot.") at 14-15.)

The IHO also denied Khanimova's request for the DOE to pay for R.N.'s nursing costs while enrolled at iBrain. (Compl. ¶ 8.) The IHO based the denial on:

- The lack of evidence in the hearing record that a one-on-one nurse was necessary to meet R.N.'s unique needs;
- The abundance of nurses already working at iBrain (approximately seventeen nurses for thirty-nine students); and
- The lack of medical documentation evidencing a need for a one-on-one nurse.

(Rec. I at 39-40.)

The IHO further ordered that the DOE pay Sisters Travel R.N.'s transportation costs only "to the extent that the [DOE] does not already pay for a bus route to and from [R.N.'s] home to

3

the private school for [R.N.'s] sister" and only when R.N. was actually at iBrain.  (*Id.* at 40.)

The IHO cited the following evidence for her decision:

- Khanimova did not give the DOE notice of "her intent to unilaterally arrange for transportation services and seek payment from the [DOE]."
- Sisters Travel already drove the route from R.N.'s home to iBrain because Khanimova's other daughter used the service, and the [DOE] should not have to pay twice for the same transportation route.

(*Id.*)

Finally, the IHO denied Khanimova's request that the DOE pay for an IEE on the basis that "[t]here is no evidence in the record that the Parent ever requested an IEE from the [DOE] prior to the filing of the [due process complaint]."  (*Id.* at 41.)

Plaintiffs appealed the decision, but the State Review Officer ("SRO") affirmed the IHO's decisions, finding "no basis in the hearing record to disturb the IHO's determination that the parent has not carried her burden of demonstrating the appropriateness of the unilateral placement at iBrain."  (*Id.* at 26.)

### B. Procedural History

Khanimova commenced this action on June 5, 2024.  (Compl.)  After filing the certified administrative record (ECF Nos. 17-1 to 17-5), Khanimova moved for summary judgment on October 22, 2024 (ECF No. 18).  Defendants opposed this motion and filed a cross-motion for summary judgment on November 19, 2024.  (ECF No. 21.)  Khanimova opposed that cross-motion on December 17, 2024 (ECF No. 26 ("Opp.")), and Defendants replied on January 3, 2025 (ECF No. 27 ("Reply")).  Khanimova moved to file a sur-reply on January 27, 2025 (ECF No. 29), which the Court denied (ECF No. 31).

## II. Legal Standard

"IDEA actions generally are resolved by summary judgment."  *S.H. v. N.Y.C. Dep't of Educ.*, No. 10-CV-1041, 2011 WL 666098, at *2 (S.D.N.Y. Feb. 15, 2011).  Unlike typical

4

summary judgment motions, however, in an IDEA action, "the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Ferreira v. Aviles-Ramos*, 120 F.4th 323, 328 n.2 (2d Cir. 2024) (quotation marks omitted). Because of this, "unlike in an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat the motion." *Bd. of Educ. of N. Rockland Cent. Sch. Dist. v. C.M.*, No. 16-CV-3924, 2017 WL 2656253, at *7 (S.D.N.Y. June 20, 2017), *aff'd* 744 F. App'x 7 (2d Cir. 2018) (summary order).

The IDEA provides a federal right of action for "[a]ny party aggrieved by the findings and decisions" of a final administrative body, such as the SRO in the present case. *See* 20 U.S.C. § 1415(i)(2)(A). The IDEA further mandates that a reviewing court:

> (i) shall receive the records of the administrative proceedings;
> (ii) shall hear additional evidence at the request of a party; and
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

*Id.* § 1415(i)(2)(C). "The Supreme Court has noted that the IDEA's requirement that the reviewing court receive the records of the administrative proceedings 'carries with it the implied requirement that due weight shall be given to these proceedings.'" *Ferreira*, 120 F.4th at 332 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).

**III.    Discussion**

States that accept federal funding under the IDEA must provide disabled students with "[a] free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). Rather than a catch-all term, a FAPE must be specifically tailored "to the unique needs of the child as described in the child's [Individualized Education Program ('IEP')]." *Id.* § 1412(a)(5)(B)(i). A FAPE also includes "related services . . . as may be required to assist a child with a disability to benefit from special education." *Id.* § 1401(9), (26)(A). Khanimova seeks reimbursement for private school tuition

and the "related services" of transportation and one-on-one nursing costs. (ECF No. 19 ("Mem.") at 7.) She also demands "an IEE at public expense." (*Id.* at 28.) The Court addresses each claim in order.

### A. iBrain Tuition Reimbursement

"When a state receiving IDEA funding fails to give a disabled child [a FAPE], the child's parent may remove the child to an appropriate private school and then seek retroactive tuition reimbursement from the state." *Ferreira*, 120 F.4th at 329 (quotation marks omitted). The United States Supreme Court has established a three-step test, known today as the *Burlington-Carter* test after two formative cases, for whether parents should receive reimbursement for unilaterally placing their disabled child at a private school. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020). Under the *Burlington-Carter* test, reimbursement is proper if "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Id.* at 526-27 (quotation marks omitted).

Defendants do not challenge the IHO's and SRO's determinations that the DOE did not provide sufficient evidence that it offered R.N. a FAPE.[2] Instead, the DOE argues that Khanimova failed to meet her burden to show iBrain was an appropriate unilateral placement and that the balance of equitable considerations disfavors reimbursement. Because the Court agrees

---

[2] The DOE did not present witnesses to defend its IEP recommendations in front of the IHO. (Rec. I at 38.) Further, the DOE did not refute the allegation that a representative from the public school to which R.N. was assigned had told Khanimova that the school "was not wheelchair accessible." (*Id.*)

that Khanimova has not shown iBrain to be an appropriate placement for R.N. during the 2023-2024 year, the Court addresses only the second prong of the *Burlington-Carter* test.

"Under New York law, the burden of proof is on the parents to show that their unilateral private placement was appropriate." *FB v. N.Y.C. Dep't of Educ.*, 132 F. Supp. 3d 522, 553 (S.D.N.Y. 2015). A parent's choice of private school in this situation "is only appropriate if it provides education instruction *specifically* designed to meet the *unique* needs of a handicapped child." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 252 (2d Cir. 2012) (emphasis in original; quotation marks omitted). Courts look to "the totality of the circumstances" in making this determination, which includes factors like grades, scores, academic and behavioral progress reports, and class size. *See Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 365-66 (2d Cir. 2006). The Second Circuit has recently clarified that at the first and second steps of the *Burlington-Carter* test, the "IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy."[3] *Ferreira*, 120 F.4th at 332 (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir. 2005)).

The Court agrees with both the IHO and SRO that Khanimova failed to establish that iBrain was an appropriate placement for R.N. Khanimova submitted three forms of evidence relevant to evaluating the appropriateness of iBrain for R.N.: (1) a ninety-one-page education plan that iBrain created for R.N. in February 2023, (2) testimony from iBrain's Deputy Director

---

[3] Khanimova argues that, per *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), "courts must exercise their independent judgment in determining whether an agency has acted within its statutory authority without automatically deferring to the agency's interpretation of ambiguous statutes." (Mem. at 15.) Putting aside the question of whether *Loper Bright* applies to a state agency's informal adjudication, the Second Circuit has not directed district courts to defer to the IHO or SRO on questions of law such as interpretation of the IDEA, but rather on broader fact-based questions of "educational policy." *Ferreira*, 120 F.4th at 332. The Court does not divine any lesson from *Loper Bright* prohibiting such deference.

of Special Education Caleb Asomugha, and (3) testimony from Khanimova herself. (Rec. I at 29, 44.) However, none of this evidence credibly shows the appropriateness of iBrain for R.N.'s unique needs during the 2023-2024 school year (the only school year at issue in this case). First, though iBrain's 2023 plan is extensive in its evaluations of R.N.'s physical and cognitive abilities as of February 2023, it does not shed any light on whether iBrain actually implemented the goals and services outlined in the plan, whether R.N. made any progress in these areas after the publication of the plan, or whether the services were necessary for R.N. during the 2023-2024 school year (as opposed to the 2022-2023 school year when the report was conducted). (*See* Rec. I at 24.) Further, as the SRO noted, Khanimova "did not offer any documentary evidence dated during the 2023-24 school year . . . such as a progress report or service delivery records." (*Id.*) In fact, "despite testimony that [iBrain maintained] data-tracking, daily reports/logs and quarterly progress reports" (*id.* at 39; ECF No. 17-5 ("Rec. V") at 170, 239), Khanimova failed to produce any of it, and even "objected to the inclusion of progress reports into the record when the [DOE] sought to enter them" (Rec. I at 39). The Court agrees with the IHO and SRO that a single goal-setting report from the preceding year, without subsequent data or even confirmation of implementation, is insufficient to meet Khanimova's burden of showing that iBrain was an appropriate unilateral placement for R.N. during the 2023-2024 school year.

Nor does the testimony of Asomugha provide sufficient evidence that iBrain's curriculum was specifically designed to meet R.N.'s needs. First, based on his testimony in the IHO proceedings, Asomugha did not have sufficient knowledge of R.N.'s experience at iBrain, or iBrain's specific offerings, to speak to whether or how iBrain was meeting R.N.'s unique needs. In response to many of the questions posed to Asomugha about iBrain's offerings and the services R.N. specifically receives, he responded that he could not answer because such matters

8

were "beyond [his] scope." (*See, e.g.*, Rec. V at 141, 146, 161, 171, 173, 179.) Importantly, he stated that all "related services" that iBrain provided R.N., such as "assistive technology," "occupational therapy," "music therapy," "speech-language therapy," and "physical therapy" were "not [within his] scope" and he thus could not speak to specifics on these offerings. (*Id.* at 146, 171, 173.) Yet according to R.N.'s weekly iBrain schedule, these "related services" took up the majority of R.N.'s day at iBrain. (*See id.* at 28.) Though Asomugha stated that such services were somehow out of his scope as Deputy Director of Special Education, he later asserted that R.N. could "[a]bsolutely not" make educational progress without music therapy. (*Id.* at 171.) When pushed further to explain this determination, Asomugha stated: "That's based on observations that I've had. And you know, it's pretty much common knowledge at the school that not only does [R.N.] enjoy music therapy, but she . . . benefits from it greatly." (*Id.* at 172.) Common knowledge and Asomugha's occasional "informal observations" of a classroom that generally range from "5 to 15 minutes" once or twice a week (*id.* at 146-47) do not provide sufficient data to support the conclusion that iBrain's services were meeting R.N.'s unique needs.

Another discrepancy in Asomugha's knowledge of R.N. and her time at iBrain was the fact that R.N. had been absent from iBrain for the two weeks preceding the IHO hearings, but Asomugha stated that he did not know why and would "have to confer with [R.N.'s] teacher" to explain the absences. (*Id.* at 212.) Nor was he aware of when R.N. would return to school. (*Id.* at 214.) Such a gap in knowledge further suggests that Asomugha was not up to date about even R.N.'s presence at iBrain.

In addition to lacking sufficient knowledge, Asomugha's credibility as a witness was also brought into question. Though he swore in his affidavit that he held a New York State teacher certification (*id.* at 20-21), he admitted at the IHO proceeding that the certification had expired

9

and he was in the process of trying to renew it (*id.* at 219). Asomugha also inaccurately stated in his testimony that R.N.'s classroom teacher, Michelle Then, was a certified special education teacher for "birth through 2nd grade," when in fact that certification was only an internship level and had expired in 2019. (*See id.* at 129-30; Rec. I at 33 n.7.) While the Court does not agree with the IHO's determination that these discrepancies render all of Asomugha's testimony totally unreliable (*cf.* Rec. I at 39), it does indicate that, at the very least, Asomugha has some misinformation about the level of instruction iBrain is actually offering its students. Taken together, Asomugha's gaps in knowledge and misinformation render his testimony insufficient to prove that iBrain was a proper unilateral placement for R.N.

      Finally, Khanimova's own testimony does not make up for the lack of information about R.N.'s 2023-2024 school year provided by the February 2023 report and Asomugha's testimony. Though Khanimova described progress in her daughter's ability to sit, grasp, stand, "scootch" on the floor, make different sounds, and drink from a sippy cup at home, Khanimova is not able to connect those improvements to the curriculum at iBrain as opposed to normal developmental growth or progress from Khanimova's support at home. (*See* Rec. V at 265.) While these changes meant "a lot to [R.N.'s family]" (*id.* at 273), and the Court does not diminish the strides made by a special needs child, a parent's testimony of what she has observed of her six-year-old child at home is insufficient to show that the school curriculum was the cause of these improvements.

      The Court thus agrees with the IHO's and SRO's determinations that Khanimova did not meet her burden of proving that iBrain was an appropriate unilateral placement for R.N. during the 2023-2024 school year. Because each element of the *Burlington-Carter* test is necessary for reimbursement of private school tuition under the IDEA, Khanimova's failure to meet her burden

as to this element necessarily means that her demand for reimbursement for iBrain's tuition during the 2023-2024 year fails. Defendants' motion for summary judgment is therefore granted on the claim for tuition reimbursement.

### B. Nursing and Transportation Reimbursement

Khanimova also seeks reimbursement for the expenses incurred in using Sisters Travel to transport R.N. to and from iBrain as well as for a one-on-one nurse during travel time and the school day. (Mem. at 7.) Under the IDEA, a FAPE includes both "special education" and those "related services" that are "required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(9), (26)(A). These related services include "transportation" and "school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child." *Id.* § 1401(26)(A).

In reviewing an independent review board's determination of whether a parent will be reimbursed for these related services, deference is "particularly appropriate" when the adjudicator's review "has been thorough and careful." *See Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). After reviewing the administrative record, the Court determines that the IHO's determinations on transportation and nursing services were well reasoned and thorough. And though the SRO did not reach the question of related services in detail, the fact that the SRO affirmed the IHO's determinations means that deference "is particularly appropriate." *Bautista v. Banks*, No. 23-CV-11161, 2025 WL 861223, at *4 (S.D.N.Y. Mar. 19, 2025).

As for transportation, the IHO ordered that the DOE pay Sisters Travel "for days that the Student actually is physically in attendance at the private school and utilizing the transportation services" and only "to the extent that it is not already paying for a route to and from the

11

Student's home." (Rec. I at 40.)  Notably, R.N.'s sister was already using transportation by Sisters Travel to get to and from iBrain every day. (*Id.*)  And the record shows that R.N. took at least a two-week leave of absence in the fall of the 2023-2024 year. (Rec. V at 212.)  The Court agrees with the IHO's reasoning that the "related services" requirement in the IDEA would not require the DOE to double-pay for a school bus route for which it already pays hundreds of thousands of dollars per year.

Khanimova cites this Court's holding in *Abrams v. New York City Department of Education*, No. 20-CV-5085, 2022 WL 523455, at *5 (S.D.N.Y. Feb. 22, 2022), for the premise that the DOE should be required to pay the full $166,770 even if that meant double-billing the DOE and paying Sisters Travel for days R.N. did not attend school. (*See* Mem. at 23.) However, a crucial difference between *Abrams* and the present case is that in *Abrams* the IHO had issued pendency orders requiring the DOE to pay the full costs of transportation without any relevant qualifying language. *See Abrams*, 2022 WL 523455, at *1.  Here, the IHO specifically limited the repayment for transportation to the very terms Khanimova now challenges. *See also Davis v. Banks*, 22-CV-8184, 2023 WL 5917659, at *4-5 (S.D.N.Y. Sept. 11, 2023) (distinguishing *Abrams* on the same basis); *Donohue*, 2023 WL 6386014, at *8 (same); *Zimmerman v. Banks*, No. 23-CV-9003, 2024 WL 4882370, at *5 (S.D.N.Y. Nov. 25, 2024) (same); *Araujo v. N.Y.C. Dep't of Educ.*, No. 20-CV-7032, 2023 WL 5097982, at *5 (S.D.N.Y. Aug. 9, 2023) (same).

The Court also agrees with the IHO's determination that Khanimova did not meet her burden of showing that R.N. required a one-on-one nurse during transit to and from iBrain and throughout the school day. (Rec. I at 39-40.)  Khanimova stated at the IHO proceeding that R.N. required such support "because she has a lot of seizures." (Rec. V at 262.)  However,

Khanimova failed to present medical documentation that R.N. requires this individual support. (Rec. I at 39-40.) And given that iBrain already had seventeen nurses in the building for thirty-nine students, including eleven adults in R.N.'s classroom who are "trained in seizure protocols" (*id.* at 40), it was entirely reasonable for the IHO to demand medical documentation to support the conclusion that such a robust support team was insufficient for R.N.

The same is true for the nurse on R.N.'s ride home. The van, which transports only R.N. and her sister the thirty to forty-five minutes it takes to get to school, already has a travel nurse for R.N.'s sister. (Rec. V at 286-88.) The fact that Khanimova also failed to provide medical documentation that R.N. requires a one-on-one travel nurse during this ride to and from school supports the IHO's conclusion that the DOE need not fund a second travel nurse in the van. (*See* Rec. I at 40.)

Further, Khanimova testified that she does not provide R.N. with a private nurse at home, and instead takes care of her herself. (Rec. V at 269.) Given that Khanimova has twelve other children (Rec. I at 31), unless she employs twelve private nurses at home, R.N. is not receiving one-on-one nursing staff outside of school and transit time, yet Khanimova did not report any problems with that level of support.

The Court thus declines to overrule the IHO's determination limiting the transportation covered by the DOE and declining to provide a one-on-one nurse for R.N. given the number of trained healthcare professionals with her during transit and at iBrain.

C.      **Independent Educational Evaluation**

Finally, Khanimova challenges the IHO's and SRO's denials of an IEE paid for by the DOE. "An IEE is 'an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question.'" *Moonsammy v. Banks*, No. 23-CV-10491, 2024 WL 4277521, at *15 (S.D.N.Y. Sept. 23, 2024) (quoting 34 C.F.R.

13

§ 300.502(a)(3)(1)). "[T]here is a limited circumstance in which a parent may seek an IEE at public expense. A parent is entitled to a publicly funded IEE 'if the parent disagrees with an evaluation obtained by the public agency.'" *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 158 (2d Cir. 2020) (quoting 34 C.F.R. § 300.502(b)(1)). "If a parent disagrees with an evaluation and requests an IEE at public expense, 'the public agency must, without unnecessary delay, either file a due process complaint to request a hearing to show that its evaluation is appropriate,' or 'ensure that an [IEE] is provided at public expense.'" *Id.* (brackets omitted) (quoting 34 C.F.R. § 300.502(b)(2)).

Defendants reiterate the arguments of both the IHO and the SRO that because Khanimova objected to the DOE's evaluation for the first time in her due process complaint, she did not provide the DOE proper notice of her objection. (*See* Opp. at 29; Rec. I at 26, 41.) However, as Judge Engelmayer held in *Moonsammy v. Banks* when faced with this issue, there is no such notice requirement in the IDEA, its enforcing regulations, or Second Circuit case law. 2024 WL 4277521, at *16. Far from it: "the Second Circuit has recognized [that] parents may express their disagreement in a multiplicity of 'formal' and informal ways, including in a due process complaint." *Id.* (quoting *D.S.*, 975 F.3d at 169 n.11).

The record contains a document entitled "due process complaint" sent from Khanimova's attorney to the DOE on July 5, 2023, which includes a section on the insufficiency of the evaluations the DOE had ordered for R.N. (*See* ECF No. 17-3 ("Rec. III") at 11, 16-17 (capitalization altered).) The DOE does not dispute the fact that Khanimova did in fact voice her disagreement with the DOE evaluations in her due process complaint. Because this lack of pre-complaint notice was the sole basis for the IHO's and SRO's determinations (*see* Rec. I at 26, 41), and Defendants have not provided any other argument for why an IEE was not appropriate

for R.N. at this time, the Court grants summary judgment in favor of Khanimova on her IEE claim.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED as to reimbursement for tuition, transportation and nursing services and GRANTED as to an Independent Educational Evaluation. Defendants' cross-motion for summary judgment is DENIED as to the Independent Educational Evaluation and GRANTED as to all other claims.

The Clerk of Court is directed to terminate the motions at Docket Numbers 18 and 21; to enter judgment of dismissal on Plaintiff's claims for tuition, transportation and nursing services; to enter judgment in favor of Plaintiff on her Independent Educational Evaluation claim; and to close this case.

SO ORDERED.

Dated: April 30, 2025
    New York, New York

_____
J. PAUL OETKEN
United States District Judge